**Albert DURRUTHY, Plaintiff,**

v.

**THE CITY OF MIAMI, Raul Martinez, as Chief of Police, and Officer Jennifer Pastor, individually, Defendants.**

**No. 01–4155–CIV–MORENO.**

United States District Court,
S.D. Florida,
Miami Division.

Dec. 13, 2002.

Alexander N. Kapetan, Jr., Wites & Kapetan, Deerfield, FL, Marc Aaron Wites, Wites & Kapeton, Deerfield Beach, FL, for plaintiff.

Warren Bittner, Miami City Attorney's Office, Miami, FL, for defendants.

Thomas Richard Julin, Dorothy Patricia Wallace, Hunton & Williams, Miami, FL, for movant.

### ORDER DENYING OFFICER JENNIFER PASTOR'S MOTION FOR SUMMARY JUDGMENT

MORENO, District Judge.

Plaintiff is a television cameraman who was arrested on April 22, 2000 in Miami, FL during the protests surrounding the Elian Gonzalez affair. Plaintiff has sued the City of Miami, its Chief of Police, and the arresting officer for violations of his constitutional rights and state law assault, battery and false arrest. Before the Court is Officer Pastor's Motion for Final Summary Judgment. For the reasons set forth below, the motion is DENIED.

### I. BACKGROUND

The relevant facts of this case are mostly undisputed, thanks in large part to a videotape that captured Plaintiff's arrest on April 22, 2000. On that day, protesters gathered in downtown Miami to voice displeasure over the United States government's decision to return Elian Gonzalez to Cuba. Government officials had removed Gonzalez from his uncle's house at approximately 5:30 a.m. that morning.

Because of the demonstrations, Flagler Street in downtown Miami was shut off to vehicular traffic and surrounded by barricades. Police officers were also attempting to move the protestors from the street to the sidewalk. By 11:00 a.m., the police had cleared the demonstrators from the

street at the intersection of Flagler Street and 27th Ave.

At approximately 11:00 a.m., the police arrested cameraman Bruce Bernstein for unknown (and irrelevant) reasons near the intersection of Flagler Street and 27th Ave. After arresting and handcuffing Bernstein, the police escorted him through the middle of the cleared street towards a paddy wagon. Plaintiff, a freelance cameraman who was filming the protests on assignment, stepped into the street in an attempt to film the arrest of Bernstein. As Plaintiff approached, the police officer who was in the process of arresting Bernstein instructed Plaintiff to return to the sidewalk.[1] Plaintiff immediately began walking backwards to the sidewalk. He continued to film. After he began walking backwards, the police officer who had told him to get out of the street rushed towards him and arrested him. Another officer, Jennifer Pastor, approached him from behind.

After grabbing Plaintiff, the two officers forced him to his stomach and kneeled on his back. The officers then pulled his arms behind him and secured his wrists. Plaintiff pleaded with the officers to be gentler with his arms because his shoulder was hurt. He also stated "I am going peacefully, Sir." Upon being handcuffed, the officers pulled Plaintiff to his feet by his arms. The police then removed what appears from the tape to be a gas mask.

Plaintiff's amended complaint contains four counts against the City of Miami, Chief of Police Raul Martinez in his official capacity, and Officer Pastor based on: (1) violations of Plaintiff's Fourth Amendment rights to be free from an unreasonable arrest and excessive force; (2) state law assault; (3) state law battery; and (4)

state law false arrest. Pastor has moved for summary judgment on all four counts.

## II. LEGAL STANDARD

Summary judgment is authorized when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

### A. § 1983 Claims

Plaintiff has alleged that Pastor, one of the two arresting officers, violated his constitutional rights under the Fourth Amendment. Pastor argues that the Court should grant summary judgment in her favor because she is entitled to qualified immunity. The Court disagrees.

■ The defense of qualified immunity shields a government official from § 1983 liability for harms arising from the offi-

---

1. This officer was not named in this lawsuit. To this day Plaintiff does not know who he was.

cial's discretionary acts, so long as the discretionary acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Vinyard v. Wilson,* 311 F.3d 1340, 1346–47 (11th Cir.2002). This defense attempts to strike a balance between the need for a remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without fear, of constant litigation. *GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1366 (11th Cir.1998).

 In order to receive qualified immunity, a defendant must first prove that he was acting within the scope of his discretionary authority. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002). Once the defendant establishes that he was acting within his discretion, the burden shifts to the plaintiff to show that qualified immunity should not be applied. *Id.* To do so, the plaintiff must satisfy a two-part test. First, the court must ask whether the defendant violated plaintiff's constitutional rights under the plaintiff's version of the facts. *Vinyard,* 311 F.3d 1340 (citing *Hope v. Pelzer,* —— U.S. ——, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) and *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If the plaintiff can establish a violation, the court must determine whether the constitutional rights were "clearly established" under the law at the time of the incident. *Id.* In making the determination of whether the law was clearly established, "the salient question" is whether the law provided the official with sufficient warning that her alleged actions were unconstitutional. *Hope,* —— U.S. ——, 122 S.Ct. at 2516; *Vinyard,* 311 F.3d at 1349.

In this case, Plaintiff does not dispute that Pastor was acting within her discretion. Plaintiff argues that Pastor violated his clearly established constitutional rights under the Fourth Amendment by arresting him without probable cause and by subjecting him to excessive force. Thus, the Court must consider, first, whether Plaintiff's rights were violated. If the Court finds a violation, the Court then considers whether the law was clearly established at the time of the arrest so as to put Pastor on notice that her conduct violated Plaintiff's rights.

### 1. Probable Cause

 Plaintiff argues that Pastor violated his constitutional rights by arresting him without probable cause. An arrest without probable cause violates the right to be free from unreasonable searches under the Fourth Amendment. *Redd v. City of Enterprise,* 140 F.3d 1378, 1382 (11th Cir.1998). Probable cause exists where an arrest is objectively reasonable based on the totality of the circumstances. *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998). This standard is met when the facts and circumstances presented to an officer "would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Id.* (quoting *Williamson v. Mills,* 65 F.3d 155, 158 (11th Cir.1995).

 To raise a valid qualified immunity defense, however, a police officer need only have had *arguable* probable cause to arrest the plaintiff. *Jones v. Cannon,* 174 F.3d 1271, 1283 (11th Cir.1999). Arguable probable cause means that a reasonable police officer in the defendant's position could have believed that probable cause existed. *Lee,* 284 F.3d at 1194. It is the plaintiff's burden to prove the absence of arguable probable cause. *Rankin,* 133 F.3d at 1436. Thus, to show that his rights have been violated, Plaintiff must prove that no reasonable police officer in the position of Pastor could have believed

that there was probable cause to arrest Plaintiff.

■ According to Pastor, arguable probable cause existed because Plaintiff interfered with the police by walking out into the street while the police were trying to clear the street. This conduct, explains Pastor, clearly violated § 843.02, Fla. Stat., which makes it a misdemeanor to "resist, obstruct, or oppose any officer ... without offering or doing violence to the person of the officer ...." Under both Florida and federal law, committing a misdemeanor in the presence of a police officer creates probable cause for arrest. *Lee*, 284 F.3d at 1196 (citing Fla. Stat. Ann. § 901.15(1) and *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001)); *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (finding arguable probable cause for an arrest based on § 843.02, Fla. Stat., where the facts showed that the plaintiff kept talking after the officer told him to be quiet, and that the officer had been told earlier that the plaintiff had previously resisted an arrest with violence).

■ After being arrested, Plaintiff was charged with violating § 843.02. However, so long as Pastor had probable cause to arrest Plaintiff for *any* offense she is shielded by qualified immunity. *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1119 n. 4 (11th Cir.1992). Accordingly, Pastor submits as alternative bases for probable cause various alleged violations of the traffic laws concerning pedestrians in the streets. Section 316.130, Fla Stat., for example, makes it unlawful for a pedestrian to "walk along and upon the portion of a roadway paved for vehicular traffic." Similarly, § 54–2 of the Miami City Code makes it unlawful for any person to "walk upon any street or sidewalk in the city so as to obstruct free passage ... after a request by a law enforcement officer to move on so

as to cease blocking or obstructing free passage." Section 316.072, Fla. Stat. also makes it a misdemeanor "for any person to willfully fail or refuse to comply with any lawful order or direction of any law enforcement officer [with respect to the traffic laws]." The Court must therefore consider these laws in relation to the facts of this case and must decide if Pastor had arguable probable cause to arrest Plaintiff based on any of them.

As for § 843.02, the videotape submitted to the Court shows that Plaintiff did indeed enter the street during the protest, and it was obvious that the street had been cleared of pedestrians. The tape also shows, however, that as soon as the police instructed Plaintiff to return to the sidewalk he immediately obeyed. Plaintiff walked backwards slowly in the direction of the sidewalk. It was while he was retreating that Pastor arrested him. Thus, Plaintiff clearly complied with the instruction of the police officer to some extent.

It is true, of course, that Plaintiff did not stop filming and did not move quickly. The question is whether Plaintiff's slow movement and continued filming could have given rise to the impression that he was resisting, obstructing, or opposing the officer. After viewing the tape, the Court will not find that it reasonably could have. Plaintiff was told to return to the sidewalk. He began moving in that direction. The fact that he continued to film and did not move as quickly as possible does not make an arrest for resisting, obstruction, or opposing an officer reasonable. Accordingly, the Court cannot find that Pastor had arguable probable cause for the arrest based on § 843.02.

■ The Court also finds that the traffic statutes identified by Pastor as alternative bases for an arrest do not suffice. First, § 316.072, Fla. Stat. and § 54–2 of

the Miami City Code specify that a person is in violation when he fails or refuses to comply with an order or direction of a law enforcement officer. Plaintiff in this case, however, *did* comply by walking backwards toward the sidewalk. He may not have moved fast enough for the officers' liking, but he complied nonetheless. As for § 316.130, Fla. Stat., the Court concludes that no arguable probable cause existed under the totality of the circumstances. The statute is directed at preventing pedestrians from walking among vehicular traffic. In this case, however, there was no vehicular traffic in the roadway. Further, Plaintiff was not a pedestrian in the normal sense of the word but an obvious member of the media acting within the scope of his journalistic duties. Under these circumstances, an arrest pursuant to § 316.130 could not be reasonable. The Court therefore finds sufficient evidence that Pastor violated Plaintiff's Fourth Amendment rights to be free from an arrest without probable cause.

 Furthermore, the Court finds that the law regarding probable cause was clearly established at the time of the arrest so as to give Pastor fair warning that her actions were illegal. While the Court notes that the "clearly established" standard is often a difficult one for plaintiffs to satisfy (and rightfully so), the Court also acknowledges that "such fair and clear notice can be given in various ways." *Vinyard*, 311 F.3d at 1350–51 (emphasis omitted). Specific case law applicable to the particular facts of a case is not always required. Instead, broad statements of the law made in certain factual situations may apply "with obvious clarity" to later factual circumstances. *Id.* In those cases the precise facts surrounding the conduct are immaterial to the violation. *Id.* Moreover, in other cases the conduct may be so obviously a violation of constitutional rights that precedential case law does not even factor into the analysis. Conduct

may be "so bad that case law is not needed to establish that the conduct cannot be lawful." *Id.*

After reviewing the record in this case and viewing the videotape of Pastor's conduct, the Court notes the unique facts in this case and acknowledges the lack of specific case law from the Eleventh Circuit or Supreme Court to put Pastor on notice of the legal constraints of her actions. Nevertheless, the Court finds that the conduct was obviously illegal, based on the complete lack of any reasonable basis for the arrest. When an obvious member of the media approaches a police officer in a cleared street, is instructed to return to the sidewalk, and complies with the instruction, a police officer should be aware that a custodial arrest based on interference with a police officer is illegal. After Plaintiff began complying with the officer's instruction, the only conduct that Pastor could base the arrest on was the fact that Plaintiff continued to film and walked slowly. Pastor did not need specific case law to give her fair warning that an arrest in these circumstances could violate Plaintiff's Fourth Amendment rights. Therefore, the Court will not grant her qualified immunity.

### 2. Excessive Force

██ Plaintiff also argues that Pastor used excessive force when she arrested him. "In order to determine whether the amount of force used by a police officer was proper, a court must ask 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'" *Lee*, 284 F.3d at 1197 (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir.2001)). As the Eleventh Circuit recently explained:

The Supreme Court has established that, in order to balance the necessity of using some force attendant to an arrest

against the arrestee's constitutional rights, a court must evaluate a number of factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Lee*, 284 F.3d at 1198 (citing *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) and *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986)).

A review of Eleventh Circuit case law applying this standard reveals that court's regular acceptance of a police officer's use of some force when making a custodial arrest. In *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir.2000), for example, the plaintiff was arrested after the officer believed that the plaintiff was in a physical fight with another individual. The police officer "grabbed him from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him." *Id.* The court found that this force was *de minimus* and concluded that "the application of *de minimus* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Id.* at 1257.

In *Jones v. City of Dothan, Ala.*, 121 F.3d 1456 (11th Cir.1997), the police arrested the plaintiff believing that he had harassed and chased a woman earlier that day. The officers "slammed" the plaintiff's head against a wall, kicked his legs apart, required him to put his arms above his head, and pulled his wallet from his pants pocket. The court applied qualified immunity to the officers, finding that "[w]hile use of force against [the plaintiff] may have been unnecessary, the actual force used and the injury inflicted were both minor in nature." *Id.* at 1460.

In *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir.1993), the police arrested a restauranteur for repeated violations of the building and health codes. The police officer, who knew that the arrestee had previously been arrested for resisting arrest, placed him against a display case, applied a choke hold, and handcuffed him. *Id.* at 1556. Afterwards, the arrestee made a remark, and the officer pushed him. The court found that "the amount of force [the officer] used, even if unnecessary, was enough to violate the law was not plain; reasonable doubt existed, and still exists, on whether this amount of unnecessary force was unlawful." *Id.* at 1560.

In this case, the force used by the officers was not clearly more violent than in *Nolin, Jones,* and *Post.* The officers shoved Plaintiff to the ground, kneeled on his back, wrenched his arms behind his back and secured his wrists with handcuffs. The officers then pulled him up by his arms. When standing, another officer pulled his mask off his face.

Nonetheless, while officers certainly have some leeway in applying force, courts must always consider the offense for which the plaintiff was arrested. A less serious offense permits less force during an arrest. Thus, in *Lee*, the plaintiff was arrested for honking her car horn at a vehicle in her traffic lane, 284 F.3d at 1191. After handcuffing the plaintiff, the officer "shoved" her against the car. The Eleventh Circuit found that arguable probable cause existed for the arrest, but declined to apply qualified immunity on plaintiff's excessive force claim. *Id.* at 1200. The court found that the force was "plainly excessive, wholly unnecessary, and, indeed, grossly disproportionate under *Graham.*" *Id.* at 1199 (citing *Graham*, 490 U.S. at 396, 109 S.Ct.

1865). The court also distinguished previous cases because "the crime at issue in this case was undeniably less significant that the crimes in any of the other cases we have considered." *Id.*

██ Police officers necessarily use force during an arrest to protect themselves and others from threats posed by the arrestee. Where that threat is minimal or nonexistent, however, the officer must tailor her actions accordingly. *See Thornton v. City of Macon,* 132 F.3d 1395, 1400 (11th Cir.1998) (per curiam). In *Thornton,* the police responded to a domestic dispute. After lying to obtain entry into the plaintiff's home, the police grabbed plaintiff's arms and neck, threw him to the floor, cuffed his hands behind his back and dragged him outside. *Id.* at 1398. The district court denied the officers' summary judgment motions and the Eleventh Circuit affirmed. The court concluded both that no arguable probable cause existed and that the police used excessive force. As for the excessive force claim, the court noted that the plaintiff was not "suspected of having committed a serious crime, neither posed an immediate threat to anyone, and neither actively resisted arrest … Under the circumstances, the officers were not justified in using *any* force, and a reasonable officer would have recognized that the force used was excessive." *Id.* at 1400.

██ Further, courts must take into account the arrestee's behavior during the incident. That is, how did the arrestee respond to the police? Where, as here, the arrestee fully cooperates, a small amount of force may be less reasonable. In *Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919 (11th Cir.2000), the plaintiff was a suspect in a burglary at a golf shop. When the police confronted the plaintiff, they instructed him to lay down. Plaintiff complied. The facts revealed that the plaintiff did not pose a threat of bodily harm to the officers or to anyone else. He was not attempting to flee. Nevertheless, the officer released his attack dog on the plaintiff while he was laying down and let the dog attack him for at least two minutes. The Eleventh Circuit found that "[n]o reasonable police officer could believe that this force was permissible given these straightforward circumstances." *Id.* 927.

██ Here, Plaintiff was a member of the media who was arrested in the street during a protest. As he approached the police officer in the street, carrying his camera, it would have been clear to anyone that he was a journalist. Obviously he was not a danger to the police officers or anyone else. He himself was not even protesting—he was merely filming another cameraman's arrest. It appears from the videotape that he was arrested because he continued to film as he walked back to the sidewalk. Thus, the only danger facing Pastor and the other police officers was to their reputation on account of Plaintiff's footage.

Plaintiff also fully complied with the officer's requests and instructions. When motioned back to the sidewalk he immediately started in that direction. Moreover, when Pastor began physically securing Plaintiff, he clearly stated "I am going peacefully!" Thus, Pastor was faced with a situation in which force was unnecessary. Pastor nonetheless forced him down to the ground, used her knee to hold him face down on the sidewalk, and pulled his arms behind his back. In light of the circumstances, the force applied was illegally disproportionate.

██ Finally, the Court also finds that at the time of the arrest it was clearly established that Pastor's conduct constituted excessive force. While Plaintiff has identified no controlling and factually similar case that covers the precise situation in this case, Pastor's conduct brings this case

within the category of cases in which the unlawfulness of the conduct is "readily apparent even without identifying caselaw." *Smith v. Mattox,* 127 F.3d 1416, 1420 (11th Cir.1997). It was completely unnecessary for Pastor to use *any* force in arresting Plaintiff. Not only was Plaintiff not fleeing and not a danger to Pastor or others, Plaintiff complied with instructions from the police. In addition, Plaintiff clearly and audibly stated that he was "going peacefully." Despite these circumstances, Pastor ran at Plaintiff, forced him to the ground, held him down by kneeling on his back, wrenched his arms behind him, and handcuffed him.

Pastor's conduct violated the "clear and obvious principle that once an arrest has been fully secured and any potential danger or risk of flight vitiated," a police officer cannot employ "severe and unnecessary force." *Lee,* 284 F.3d at 1200. Where a principle is "clear and obvious," an officer cannot argue that she had no warning that her conduct was verboten. Pastor is thus not entitled to qualified immunity.

## B. State Law Claims

Pastor has also moved for summary judgment on Plaintiff's claims under Florida law for assault, battery, and false arrest. In light of the Court's findings above, however, the Court need not pause long to deny the motions.

First, as for the assault and battery claims, a jury question is created by a police officer's use of arguable excessive force while effectuating an arrest. *City of Homestead v. Suarez,* 591 So.2d 1125, 1125 (Fla. 3d DCA 1992). As the Court has found that Pastor used arguably excessive force in this case, summary judgment is inappropriate on these claims.

Second, as for the false arrest claim, Pastor has argued that the claim is barred because she had probable cause for the arrest. The Court has found that based on the record before it no such probable cause existed. Summary judgment is therefore unwarranted on this claim as well.

## IV. CONCLUSION

Plaintiff has satisfactorily demonstrated that Pastor violated his Fourth Amendment constitutional rights by arresting him without probable cause and by using excessive force during the arrest. As a result, Plaintiff has also created an issue for the jury on his state law claims for assault, battery, and false arrest. It is therefore

**ADJUDGED** that Officer Pastor's Motion for Final Summary Judgment (D.E. No. 41), filed on *August 16, 2002* is DENIED.